IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

ROY D. BAKER, JR.,
f/d/b/a BAKER & LANCIANESE,
f/d/b/a BAKER & ORNDORFF, and
f/d/b/a BAKER LAW OFFICES

   Plaintiff,

v.                Case No. 3:11-cv-00505

BORGWARNER MORSE TEC, INC.,

   Defendants.

## ORDER

  Pending before the Court is Defendant's motion to compel Plaintiff to produce copies of all invoices sent to clients for whom Rick Lancianese and David Sansom performed work between 2004 and 2008 (ECF No. 58). Plaintiff has responded to the motion, and Defendant has replied to the response. On April 30, 2012, the Court conducted a hearing to entertain oral argument on the issue.

  Plaintiff objects to producing the requested billing records on two grounds. First, he argues that bills sent to clients other than the Defendant are protected by the attorney-client privilege and work product protection. Next, Plaintiff claims that Rule 1.6 of West Virginia's Rules of Professional Conduct prohibit his disclosure of any "information relating to the representation of a client," unless the client expressly provides informed consent to the disclosure, or the disclosure falls within one of the exceptions set forth in the Rule. According to Plaintiff, a court-ordered disclosure of his

billing records would not fall within any of the stated exceptions and he has not obtained the consent of his clients.[1] The Court addresses each of these arguments in turn.

As a general rule, attorney billing records have been subject to disclosure in discovery. The attorney-client privilege "does not envelope everything arising from the existence of an attorney-client relationship," *United States v. Goldfarb,* 328 F.2d 280, 282 (6th Cir. 1964), and normally does not extend to the payment of attorney's fees and expenses, *United States v. (Under Seal),* 774 F.2d 624, 628 (4th Cir.1985), *cert. denied,* 475 U.S. 1108, 106 S.Ct. 1514, 89 L.Ed.2d 913 (1986); s*ee also United States v. In re Grand Jury Matter,* 789 F.Supp. 693, 695 (D.Md. 1992), except in those instances where the nature of services provided can be revealed. *Southern Union Co. v. Liberty Mutual Insurance Co.,* 2008 WL 8564583, at *5 (D.Mass. March 25, 2008), *citing Colonial Gas Co. v. Aetna Cas. & Sur.* Co., 144 F.R.D. 600, 607 (D.Mass. 1992); *Chaudhry v. Gallerizzo,* 174 F.3d 394, 402-03 (4th Cir.1999) ("[T]he identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed are usually not protected from disclosure by the attorney-client privilege. However, correspondence, bills, ledgers, statements, and time records which also reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law, fall within the privilege," *citing Clarke v. American Commerce National Bank,* 974 F.2d 127, 129 (9th Cir. 1992)); *Pollard v. E.I. DuPont de Nemours & Company,* 2004 WL 784489, at *4 (W.D.Tenn. Feb. 24, 2004) (holding as a general rule "attorney fees are not deemed privilege and are subject to discovery."); *In re Grand Jury*

---

[1] Plaintiff concedes that he made no effort to obtain consent, contending that he has no duty to do so.

*Proceedings,* 33 F.3d 342, 353-54 (4th Cir. 1994); *United States v. Haddad,* 527 F.2d 537, 538–39 (6th Cir. 1975) ("In the absence of special circumstances, the amount of money paid or owed to an attorney by his client is generally not within the attorney-client privilege."). Similarly, the work product privilege does not shield every document created in the course of a client representation, but does protect against disclosures of an attorney's mental impressions, conclusions, opinions, and legal theories. The work product privilege usually does not extend to payment records, where no such attorney work product is revealed. *Tullis v. UMB Bank, N.A.*, 2011 WL 6028581, at *8 (N.D.Ohio December 5, 2011), *citing Nesse v. Pittman*, 202 F.R.D. 344, 356 (D.D.C. 2001); *Cardenas v. The Prudential Ins. Co. Of America,* 2003 WL 21302957 *3 (D.Minn. May 16, 2003) (to support claims of attorney-client privilege and work product protection an attorney must state "that its billing records contain narrative descriptions of conversations between clients and attorneys, the subjects of legal research or internal legal memoranda, and activities undertaken on the client's behalf."); *United States v. Skeddle,* 989 F.Supp. 890, 904 (N.D.Ohio 1997), *quoting Duttle v. Bandler & Kass,* 127 F.R.D. 46, 52 (S.D.N.Y. 1989) ("To be given privileged status, 'fee information must amount to or reveal confidential information regarding the advice sought from the attorney.'"); *Federal Trade Commission v. Cambridge Exchange, Ltd.,* 845 F.Supp. 872, 874 (S.D.Fla. 1993) (billing records are not protected by the attorney-client privilege unless they describe the nature of the legal services provided or the trial strategy). To the extent that an attorney's billing records contain information protected by attorney-client privilege and the work product doctrine, redaction is a proper course of action toward preventing disclosure of the nature of attorney's services. *See Reynolds v. Beneficial Nat. Bank,* 288 F.3d 277, 286 (7th Cir. 2002) ("In the unlikely event that

some confidential information is contained in the [fee] applications, that information can be whited out."); *Global Finance, LLC v. Pay Pro Card Corp.,* 2008 WL 4663900, at *2 n. 5 (M.D.Fla. Oct. 20, 2008) ("Plaintiff's counsel's billing records are redacted in places to avoid divulging information protected by either the work product doctrine or the attorney-client privilege. This practice is appropriate."); *Barlow v. General Motors Corp.,* 2008 WL 906169, at *4 (S.D.Ind. March 31, 2008); *Allen v. Ghoulish Gallery*, 2008 WL 474394 (S.D.Cal. February 19, 2008) (ordering all billing records to be redacted "so as to remove all information that is protected by the attorney-client and work-product privileges."); *Pollard v. E.I. DuPont de Nemours & Company,* 2004 WL 784489, at *4 (W.D.Tenn. Feb. 24, 2004) (endorsing the parties' agreement that the movant would redact any portion of its billing entries that was subject to the attorney-client privilege or work-product doctrine); *Sequa Corp. v. Gelmin,* 1994 WL 538124, at *4 (S.D.N.Y. Sept. 30, 1994) (redactions to attorney billing records are proper when they mask legal advice). Consequently, Plaintiff's billing records are not properly withheld in their entirety on blanket assertions of attorney-client privilege and work product protection.

Plaintiff's reliance on Rule 1.6 of West Virginia's Rules of Professional Conduct to constitute a complete prohibition to discovery of the billing records is equally unpersuasive.[2] Rule 1.6 provides as follows:

> (a) A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraph (b).
>
> (b) A lawyer may reveal such information to the extent the lawyer reasonably believes necessary:

---

[2] The undersigned could not locate any case that directly addressed this argument.

> (1) to prevent the client from committing a criminal act; or
>
> (2) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of a client.

While this Rule undoubtedly requires a broad ethical duty of confidentiality, it was never intended to obstruct the progress of court-ordered discovery. To the contrary, the West Virginia Supreme Court anticipated the assertion of the Rules of Professional Conduct in the context of litigation and explicitly limited their affect on the judicial application of the attorney-client and work product privileges, stating in their Scope:

> Moreover, ***these Rules are not intended to govern or affect judicial application of either the attorney-client or work product privilege.*** Those privileges were developed to promote compliance with law and fairness in litigation. In reliance on the attorney-client privilege, clients are entitled to expect that communications within the scope of the privilege will be protected against compelled disclosure. The attorney-client privilege is that of the client and not of the lawyer. The fact that in exceptional situations the lawyer under the Rules has a limited discretion to disclose a client confidence does not vitiate the proposition that, as a general matter, the client has a reasonable expectation that information relating to the client will not be voluntarily disclosed and ***that disclosure of such information may be judicially compelled only in accordance with recognized exceptions to the attorney-client and work product privileges.***

(Emphasis added.). The Comment to Rule 1.6 adds that when a lawyer is called as a witness to give testimony concerning a client, the lawyer should invoke the privilege, but "must comply with the final orders of a court or other tribunal of competent jurisdiction requiring the lawyer to give information about the client."[3] Here, Plaintiff has invoked the privilege and sought to maintain the confidentiality of his clients' information.

---

[3] In 2002, the American Bar Association (ABA) added an exception to Model Rule 1.6 allowing disclosure "to comply with other law or a court order." Although this exception is not explicitly contained in West Virginia's version of the Rule, the ABA made clear in its annotations to Model Rule 1.6 that this addition "was not intended as a substantive change" and merely reflected current practice.

Accordingly, he has complied with his duty of professional conduct. Nonetheless, the billing records requested are clearly relevant to the allegations asserted by Defendant in its counterclaim and, to the extent that they are not privileged, are discoverable.[4]

Having fully considered the arguments and legal citations presented by counsel, the Court **GRANTS** Defendant's motion to compel and **ORDERS** Plaintiff to produce within thirty days (30) days of the date of this Order copies of all client invoices, which contain entries for work performed by Mr. Lancianese and/or Mr. Sansom in asbestos-related matters from 2004 to 2008, and which were sent out by Plaintiff's law firm. Plaintiff shall be permitted to redact portions of entries that reveal litigation strategy, the subject of research performed, narratives of conversations with clients, and the mental impressions, conclusions, legal theories, and legal opinions of an attorney.

The Clerk is instructed to provide a copy of this Order to all counsel of record.

**ENTERED**: May 3, 2012.

Cheryl A. Eifert
United States Magistrate Judge

---

[4] Plaintiff's argument is further strained when examining Rule 1.6(b)(2), which effectively allows Plaintiff to disclose client billing records without consent if he reasonably believes that the disclosure is necessary for him to respond to allegations in a proceeding concerning his representation of *any* client. In the present case, Defendant, a former client of Plaintiff, alleges that his firm improperly billed for its services. Applying Plaintiff's interpretation of Rule 1.6, he could use other clients' bills to defend himself against the counterclaim, but could simultaneously withhold those bills from the Defendant if they proved detrimental to Plaintiff's position. Certainly, that type of litigation inequity is not the intent of the Rule.