IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

ROY D. BAKER, JR.,
f/d/b/a BAKER & LANCIANESE,
f/d/b/a BAKER & ORNDORFF, and
f/d/b/a BAKER LAW OFFICES,

                Plaintiff,

v.                              CIVIL ACTION NO. 3:11-505

BORG WARNER MORSE TEC, INC.,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant BorgWarner Morse Tec, Inc.'s Motion to Dismiss Counts II and III, and Motion for More Definite Statement of Count II, to Plaintiff's Second Amended Complaint. [ECF No. 55]. Plaintiff Roy D. Baker, Jr. opposes the motion. For the following reasons, the Court **GRANTS** Defendant's motion to dismiss Count II, **GRANTS, in part**, and **DENIES, in part**, Defendant's motion with respect to Count III, and **DENIES AS MOOT** Defendant's motion for an a more definite statement.

**I.
BACKGROUND**

Pursuant to this Court's Memorandum Opinion and Order entered on January 23, 2012, Plaintiff filed a Second Amended Complaint on January 30, 2012. In the Second Amended Complaint, Plaintiff asserts that, in 2004, Defendant retained him as an attorney to represent its interests in various asbestos litigation throughout West Virginia. Plaintiff alleges that he never had a written contract with Defendant, but they had "an oral understanding at the outset of representation

that Defendant was required to follow the then existing billing guidelines of CNA Insurance Company, one of Defendant's insurers." *Second Amended Complaint*, at ¶8, ECF No. 52. Plaintiff claims, however, that those guidelines are "invalid, void, unenforceable, and unethical by reason of LEI 2005-01," an ethics opinion issued by the Lawyer Disciplinary Board of the West Virginia State Bar. *Id*. at ¶ 42.

In 2007, Plaintiff states he discovered one of his employees, attorney Richard Lancianese, improperly billed Defendant for work on some cases. Following an audit of the billing records, Plaintiff states he paid Defendant over $50,000, which Defendant accepted as full restitution. Plaintiff asserts he continued to work for Defendant after he disclosed the billing problems, but Defendant has refused to pay the invoices for the work he did. Therefore, Plaintiff filed this action on May 26, 2011, to collect $161,008.44, plus interest and costs.[1] Defendant filed a counterclaim against Plaintiff, alleging it was substantially overbilled for Plaintiff's legal services.

Plaintiff's contact with Defendant was with Defendant's in-house attorney, Peggy Muensterman. Since the time this action was filed in state court, Defendant has been represented by Edward Smallwood. In the later part of 2008, Ms. Muensterman filed an ethics complaint with the Office of Disciplinary Counsel of the West Virginia State Bar against Plaintiff and a complaint against Mr. Lancianese. Plaintiff alleges that, at some point, Ms. Muensterman disclosed his

---

[1]The original Complaint was filed in state court. On June 29, 2011, Plaintiff amended his Complaint. Thereafter, Defendant removed the action to this Court on July 25, 2011, based upon diversity of jurisdiction.

verified response to the ethics complaint to Mr. Smallwood. Plaintiff claims Mr. Smallwood, in turn, disclosed the verified response to another attorney by the name of Thomas Crawford. According to Plaintiff, Messrs. Smallwood and Crawford jointly represent Foremost Insurance Company, who is a defendant in a state court action filed by Plaintiff. Plaintiff claims the document was disclosed so that it could be used against him as evidence in the Foremost Insurance Company action and, such disclosure, violated certain ethics rules.

In Plaintiff's Second Amended Complaint, he asserts three causes of action against Defendant. Count I is for "Statement on Account." Count II is for a Declaratory Judgment. Count III is for Bad Faith by Defendant. Defendant moves to dismiss Counts II and III or, in the alternative, to dismissing Count II, for a more definite statement. Upon review, the Court **GRANTS, in part,** and **DENIES, in part**, Defendant's motion.

## II.
## Standard of Review

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the United States Supreme Court disavowed the "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41 (1957), which was long used to evaluate complaints subject to 12(b)(6) motions. 550 U.S. at 563. In its place, courts must now look for "plausibility" in the complaint. This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (internal quotation marks and citations omitted). Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Id*. (citations omitted). If the allegations in the complaint, assuming their

truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 558 (internal quotation marks and citations omitted).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court explained the requirements of Rule 8 and the "plausibility standard" in more detail. In *Iqbal*, the Supreme Court reiterated that Rule 8 does not demand "detailed factual allegations[.]" 556 U.S. at 678 (internal quotation marks and citations omitted). However, a mere "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Id*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The Supreme Court continued by explaining that, although factual allegations in a complaint must be accepted as true for purposes of a motion to dismiss, this tenet does not apply to legal conclusions. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id*. at 679. If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id*. (quoting, in part, Fed. R. Civ. P. 8(a)(2)). The Supreme Court further articulated that "a court considering a motion to dismiss can choose to begin by identifying

pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

### III.
### Declaratory Judgment

Defendant argues that Plaintiff's Count for Declaratory Judgment is deficient on its face because it fails to identify the contract at issue, the terms of the contract, and the relief Plaintiff seeks. Plaintiff's request for a declaratory judgment is basically a series of questions. These are:

> 54. Was a contract formed between Plaintiff and Defendant? And if so, when?
>
> 55. Was the contract formed by and between Plaintiff and Defendant created in oral or written form?
>
> 56. Were CNA's written billing guidelines incorporated in or made a part of any contract between Plaintiff and Defendant?
>
> 57. By examining LEI 2005-01 of the West Virginia State Bar's Committee on Lawyer Discipline or Office of Disciplinary Counsel, do the CNA guidelines violate the principles enunciated in LEI 2005-01 such that Defendant may not rely on the guidelines at this time as a defense to Plaintiff's claim or support of its Counterclaim to the extent that Defendant seeks reimbursement of amounts previously paid by Defendant to Plaintiff between the years 2004 and 2008, or as a means of reducing the amounts of invoices listed in the Statement of Account to the Amended Complaint?

*Second Amended Complaint*, at ¶¶ 55-57. In his Response, Plaintiff concedes that paragraph 54 "may[] be inappropriate for declaratory relief," as "it is clear from the entirety of the Second

Amended Complaint that the existence of a contractual relationship is not an issue before the court or in actual controversy." *Pl.'s Resp. Mem. of Law in Opposition to Def.'s Mot. to Dismiss Counts II and III of Pl.'s Second Am. Compl. and Mot. for More Definite Statement*, at 4, ECF No. 77. However, Plaintiff essentially argues that answering the other questions posed in Count II will determine the scope of discovery.

Initially, the Court agrees with Defendant that Count II is fatally defective on its face because it is merely a series of questions with no specific request for relief (other than to have the questions answered). Although Plaintiff asserts the relief he seeks should be obvious, it is not Defendant's or this Court's responsibility to speculate about the relief sought. Indeed, Plaintiff admits that paragraph 54 is inappropriate for declaratory judgement. Thus, the Court finds that this ground alone is sufficient to grant Defendant's motion to dismiss.

In addition, the Court recognizes that it is within it's discretion whether to declare the rights of the parties under the Declaratory Judgment Act. 28 U.S.C. § 2201(a) (stating, in part, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought"); *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir. 1998) (stating the Act's permissive language gives courts the "discretionary authority . . . to hear declaratory judgment cases"). The United States Supreme Court has "repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'" *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287

(1995) (quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952) (other citations omitted)). The Fourth Circuit has "held that a federal district court should normally entertain a declaratory judgment action within its jurisdiction when it finds that the declaratory relief sought (i) will serve a useful purpose in clarifying and settling the legal relations in issue, and (ii) will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 375 (4th Cir. 1994) (internal quotation marks and citations omitted).[2] However, a court may decline to hear a declaratory judgment action for "good reason." *Id.* (internal quotation marks and citations omitted).

Applying this standard to the present cause of action, the Court finds Plaintiff's "questions" in Count II are intrinsically intertwined with its "Statement on Account" in Count I, which is a contract claim. In a nutshell, the questions posed in Count II are: does an oral or written contract exist and, if so, do the terms of the contract violate West Virginia's ethics rules. In this sense, Count II is duplicative of Count I, and Plaintiff asserts that whether a contract exists is not even at issue. Therefore, the Court sees little value in treating these questions as a declaratory judgment action separate and apart from Count I. If Plaintiff believes certain issues related to the contract should be resolved prior to trial, he may file a motion for summary judgment on those issues. The Court then can determine whether the issues presented are purely legal issues or whether a factual dispute exists which makes the issues more appropriate for a jury to determine.

---

[2]*Overruled on other grounds by Wilton.*

## IV.
## Count III

In Count III, Plaintiff alleges that Defendant breached the covenant of good faith and fair dealing by vaguely alleging fraud, relying upon unlawful billing guidelines, requesting Plaintiff continue to perform legal services for Defendant when it had no intention to pay for such services, attempting to use "the disciplinary rules and process to gain improper advantage or evidence for use in civil proceedings," seeking claims in its counterclaim which are barred by the statute of limitations, disclosing privileged and confidential information to a third party, and using the ethics process to delay or avoid paying Plaintiff's invoices. *Second Amended Complaint*, at ¶¶ 66-73. BorgWarner argues that Plaintiff cannot state a cause of action or recover damages because Ms. Muensterman filed an ethics claim against him as it is entitled to absolute immunity under the disciplinary system.

In his Response, Plaintiff agrees with Defendant that he cannot state a claim merely on the ground that Ms. Muensterman filed an ethics complaint against him. However, Plaintiff insists that he is not making such a claim in Count III. Rather, Plaintiff states he is alleging Defendant engaged in post-suit misconduct which involved, inter alia, the improper disclosure and use of the confidential response he filed to the ethics complaint and Defendant continued to attempt to enforce CNA guidelines when it knows such guidelines violate state ethics rules.

Upon review, the Court agrees with Defendant that, to the extent Count III can be read as a claim against Defendant based upon the filing of an ethics complaint, Defendant is entitled to immunity and the claim would be barred. *See Rule 2.7 of the West Virginia Rules of Lawyer*

*Disciplinary Procedures* (providing, in part, "[a]ll information provided, documents filed or testimony given with respect to any complaint, investigation or proceeding under these rules shall be privileged in any action for defamation"); *see generally Farber v. Dale*, 392 S.E.2d 224, 227 (W. Va. 1990) (holding "a defendant who has been sued for libel as a result of testimony given before the West Virginia State Bar Legal Ethics Committee is entitled to absolute immunity from such suit, as provided by Article VI, Section 43 of the West Virginia State Bar Constitution"); *Daily Gazette Co. v. Comm. on Legal Ethics of the W. Va. State Bar*, 326 S.E.2d 705, 712 (W. Va. 1985) (stating Article VI, Section 43 "is designed to encourage the filing of valid complaints, [and] grants absolute libel immunity to complaints under the attorney disciplinary system, even to those who file groundless or malicious complaints").[3] However, the Court also agrees with Plaintiff that the focus of his claim is not the fact Ms. Muensterman filed an ethics complaint against him but, instead, that his confidential response was disclosed in order to gain unfair advantage in this and another case. This alleged act is clearly outside the confines of the ethics proceeding and the protection those proceedings provide Defendant. In addition, Plaintiff claims that Defendant persists upon using improper guidelines to avoid paying him for his services. Although Defendant disputes this allegation, the issue of how Defendant is evaluating the billing submitted by Plaintiff is a matter best left to discovery. Therefore, to the extent Count III can be interpreted as a claim against Defendant for filing an ethics complaint, the Court **GRANTS** Defendant's motion to dismiss, but the Court **DENIES** the remainder of the motion.

---

[3]Article VI of the By-Laws of the West Virginia State Bar Constitution is now vacant. However, § 2.6 of the West Virginia Rules of Lawyer Disciplinary Procedure sets forth the parameters of confidentiality in such proceedings and § 2.7 provides for immunity against a defamation suit.

## V.
## CONCLUSION

Accordingly, for the foregoing reasons, the Court **GRANTS** Defendant's motion with respect to Count II and **GRANTS, in part**, and **DENIES, in part**, Defendant's motion with respect to Count III. As the Court grants Defendant's motion to dismiss Count II, it further **DENIES AS MOOT** Defendant's motion for a more definite statement with respect to that count.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

        ENTER:     May 17, 2012

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE